IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.                                                 **Criminal No. 3:19cr127**

**RAMON BROWN,**

         **Petitioner.**

## MEMORANDUM OPINION

Ramon Brown, a federal probationer proceeding *pro se*, filed this 28 U.S.C. § 2255 Motion ("§ 2255 Motion"). (ECF No. 46.)[1] In his § 2255 Motion, Brown demands relief upon the following grounds:

| | |
|---|---|
| Claim One | Brown was denied the effective assistance of counsel on appeal when counsel failed to raise the issue that Brown had a set of keys in his pocket at the time of the assault. (ECF No. 46, at 4.) |
| Claim Two | Brown was denied the effective assistance of counsel when counsel advised Brown not to testify. (ECF No. 46, at 5.) |

The Government has responded. (ECF No. 55.) Brown has not filed a reply. For the reasons set forth below, the § 2255 Motion, (ECF No. 46), will be DENIED.

### I. Pertinent Factual and Procedural History

On February 28, 2019, Brown was charged in a Criminal Information with simple assault at the Hunter Holmes McGuire Veterans Administration Medical Center for his "offensive touching, to wit: the defendant touched the buttocks of [Ms. Torres] as she was standing in the cafeteria." (ECF No. 1, at 1–2.) On May 31, 2019, following a bench trial before then United States Magistrate Judge Novak, Brown was found guilty of the charge in the Criminal

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

Information. (ECF No. 19, at 1.) On September 6, 2019, the Magistrate Judge sentenced Brown to three years of probation. (ECF No. 37, at 2.)

Brown appealed to the undersigned United States District Judge. (ECF No. 38.) On appeal, Brown asserted that insufficient evidence supported his conviction. (ECF No. 41, at 7.) Specifically, Brown asserted that insufficient evidence existed to support that he intentionally touched Ms. Torres. (ECF No. 41, at 8.) In rejecting that argument, the Court stated:

> So the evidence before then-Magistrate Judge Novak consisted of a videotape of the incident and also still photos, that are screenshots essentially, of the video; the testimony of Nicole Torres, a V.A. employee, and the alleged victim; the testimony of Derrick Coles, Mr. Brown's supervisor; the testimony of Walter Davis, Mr. Brown's co-worker and roommate; and the testimony of Ann McLaughlin, who was in the canteen or cafeteria at the time.
> Obviously, the witness that was most important for the United States was Ms. Torres. She testified that on the morning of December 12th, 2018, she was in the cafeteria of Hunter Holmes Maguire Medical Center getting a fork. That's the joint appendix at 47. She described her interaction with Mr. Brown as follows:
> "I felt this individual coming. Well, I saw him coming, changed courses he was going on. He was going straight. He changed in a 90-degree angle toward me." Angle I just added. "And I felt him touch my right butt -- bottom cheek, butt cheek."
> Later in her testimony, she described the incident in a similar fashion. She testified "I am getting a fork from the fork dispenser in the cafeteria area. And the individual is coming down the hall, changes his course, and comes straight behind me and feels my right buttock cheek, and then he continues to talk to a guy in the corner, who he started laughing and whispering with." That's in the joint appendix at 52.
> The Court then asked, "Ma'am, could you describe the nature of the touching? Did he just touch you? Did he grab you? Tell me what it felt like."
> Ms. Torres responded, "He -- he pressed his hand against my right butt cheek."
> The Court said, "Okay."
> Ms. Torres said, "I felt that he wanted to feel my body."
> The Court said, "Okay. And I gather that was unwanted by you; is that correct?"
> Ms. Torres responded, "Correct."
> And the Court asked, "And were you offended by the contact?"
> And Ms. Torres says, "I was very offended."
> And that's the joint appendix at 50 and 51.

2

Ms. Torres also described the hallway in which she was standing as 10 to 12 feet wide and stated that the hallway doesn't narrow. That's the joint appendix at 41.

Although Ms. Torres didn't know Mr. Brown at the time, she gathered information from the guy that he went and talked to after the incident with whom he was laughing, and then reported the incident. That's the joint appendix at 56.

During Ms. Torres' testimony, both the United States and the defense counsel played a video of the incident. The video shows Ms. Torres in the foreground, a man identified by Ms. Torres and Mr. Coles as Mr. Brown enters the frame from the left, turns his body toward Ms. Torres and swings his right arm, which appears to make contact with Ms. Torres on the lower half of her body. Ms. Torres turns around sharply to look at Mr. Brown as he passes and continues out of frame.

Mr. Brown -- I'm going to make a finding with respect to the arm movement because there's cross-examination as to whether or not he was swinging his arm. Ms. Torres said it was not -- she would not describe it as swinging, and I, having viewed the video itself, it does not look like a natural arm movement of somebody just walking around. It's awkward at best. And it's sort of contrary to where his body is heading, meaning his arm is behind him in a way that is inconsistent with the way that his body is facing forward. And the testimony or the video shows that, in any event, if he were just swinging his arm, it would be perpendicular to Ms. Torres' back because he was at an angle to her. It would not be natural that his hand would be facing outward away from his body as I view the video that I saw.

Mr. Brown called two witnesses. Mr. Davis testified that he did not see Mr. Brown make contact with Ms. Torres in the cafeteria but did appropriately admit on cross-examination that he couldn't see what was happening behind Ms. Torres at the time of the incident because there was this island in front of her and in between her and him.

Ms. McLaughlin, who was by the registers at the time of the incident, noted that she did not see anyone touch Ms. Torres, and that's the joint appendix at 96 and 97, but she also agreed on cross-examination that she previously told the investigator that she was not really paying attention at the time of the incident.

And one of the reasons the parties are disputing so strongly the event is because it's quick. It happens in a matter of seconds.

So Judge Novak found that the United States had proven Mr. Brown guilty of simple assault by offensive touching beyond a reasonable doubt. . . . I have reviewed, as I've said, the trial testimony, the video, and the exhibits, and taken into account the oral argument from the parties. I conclude that the appeal must be denied, and the decision sustained, and the appeal dismissed. And I do so for the following reasons and viewing the evidence favorably under the standards that are before me today:

So the first is the strong credit that the Magistrate Judge gave to Ms. Torres' testimony, and I cannot disturb the credibility judgment even viewing the video separately. And, in fact, I don't think that the video is inconsistent.

The determination of credibility of witnesses lies in the exclusive domain of the fact finder and is not subject to judicial review. That's the *Lomax* case at 705.

Here Ms. Torres was unequivocal in her impression that Mr. Brown meant to touch her. She stated that he changed his direction in 90 degrees, and that she felt him touch her.

She further testified that he pressed his hand against her butt cheek and that she felt like he wanted to feel my body. And that's at the joint appendix at 51.

I take into account more the actual description of what happened rather than her description of what she thought he wanted to do. It's a present sense impression from her perspective, but it is not necessarily the determination that I'm relying on.

As I said, I think that the video substantially corroborates Ms. Torres' account. The man identified now as Mr. Brown can be seen entering on the screen. He turns his body toward Ms. Torres, and his right arm moves as he passes closely behind her.

I can't find, even with argument and having reviewed the video, that her movements led to the touching unintentionally, and that the timing of her appearance on the other side of what was the fork dispenser area necessarily caused an unintentional event. And do that in part because, as I indicated earlier, the arm movement that I see is awkward at best and contrary to how I think most folks operate when they're just walking.

The other thing is, although it's neither here nor there, if there was an unintentional touching where it's a hand on someone's behind, the normal response would be to apologize for running into somebody, and certainly nothing like that happens. I'm not really holding that against Mr. Brown, but it certainly is the case that when you unintentionally run into somebody in any way, one generally says "I'm sorry I ran into you."

The other thing is almost instantaneously Ms. Torres turns sharply around to look at Mr. Brown, who at that time has his back to her, and she reports the event immediately. She goes to the gentleman who could identify Mr. Brown, and she reports it up. All of that confirms that she felt that it was a different kind of touching. And based on her instantaneous reaction, that is not inconsistent with a finding that it was intentional because if it's unintentional, one might be more inclined, less pressing, even though there's no grabbing or pinching, I understand that, one might be inclined to say something other than that this was an assault. That falls into more this person is rude kind of conduct.

So I would say that really just my review of the video alone warrants affirming the decision, both as to Rule 29 and as to the sufficiency of the evidence that was made by the Magistrate Judge. But there is other evidence that the Judge did not specifically state that I have noted and which supports a verdict.

Mr. Brown was very close to Ms. Torres despite the fact that this was a wide hallway of 10 to 12 feet. The defense witnesses just don't contradict the evidence, and I can see the hallway. It's big. I don't think it would be unfair to call it a corridor. And the witnesses who did testify both admitted that they couldn't see what was going on.

. . . .

4

> So viewing the evidence in the light most favorable to the government, I find that substantial evidence supports the denial of the Rule 29 motions and that a rational trier of fact could have found that Mr. Brown intentionally and offensively touched Ms. Torres on December 12th of 2018. Her testimony and the video of the incident strongly support the conclusion that the touching was intentional and unwanted. And so I must affirm the conviction and dismiss the appeal.

(ECF No. 49, at 19–29.)

## II. Analysis

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Advice Not to Testify

In Claim Two, Brown faults counsel for advising him not to testify in his own defense. Trial counsel is responsible for counseling the defendant as to his right to testify and any "tactical implications of doing so[.]" *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998) (citation omitted). Here, Brown fails to demonstrate that counsel provided deficient advice regarding testifying or that his testimony could have affected the outcome of the trial.

5

Counsel explains that she met with Brown before trial on May 28, 2019. Counsel swears:

> As a part of our discussion that day, I talked with Mr. Brown about his right to testify at his trial. I discussed with Mr. Brown that he had prior felony convictions for assaulting police officers from 2011 and 2016. I discussed with Mr. Brown that the government would be able to cross-examine him about the fact of his prior felony convictions if he testified at trial. I also understood that Mr. Brown was very upset about the allegation in this case. Because of his mental health issues and because Mr. Brown (and myself) believed he was innocent of the crime charged, I was concerned that Mr. Brown, if pushed on cross-examination or if questioned by the Court, might respond with great agitation. I advised Mr. Brown—because of my concern that his testimony could draw out information about his prior convictions as well as my concern that he might respond to cross-examination or questioning by the Court with hostility—not to testify in his own defense.

(ECF No. 55–1 ¶ 7.) Counsel's advice appears eminently reasonable given Brown's circumstances.

Further, Brown fails to proffer how he proposed to testify. That alone forecloses this claim. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"); *Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990) (dismissing claims where petitioner failed to make an adequate proffer of testimony of witness). Moreover, given the abundant direct evidence of Brown's guilt, the Court fails to discern what persuasive testimony Brown could have provided that would have resulted in his acquittal. Accordingly, Claim Two will be DISMISSED.

### B. Failure to Raise Keys on Appeal

In Claim One, Brown faults counsel for not raising on appeal the issue that he had keys in his pocket. Counsel explains that, on September 17, 2019, "[a]fter Mr. Brown's conviction and sentencing, he first indicated to me that he had been carrying a cord that held a set of heavy keys in his pocket at the time of the alleged touching." (ECF No. 55–1 ¶ 5.) Counsel states that:

6

> On September 23, 2019, I met with Mr. Brown at his home to review the video specifically regarding the set of keys he had been carrying. I could see a cord han[g]ing from either his right pants pocket or his right sweatshirt pocket in Government's Exhibit 1B—about 45 seconds into the video in that exhibit. I had not observed that cord before in reviewing that video. I had not explored through investigation anything relating to whether the alleged touching in the case could have been the result of the keys in Mr. Brown's pocket hitting the woman accidentally as he walked past her in the cafeteria. I discussed this information with Mr. Brown in detail on September 23, 2019. I explained that while I could see the cord protruding from his right pocket, without further evidence, I could not present that information to the Court on appeal because further evidence explaining the significance of that cord was not in the trial court record.

(*Id.* ¶ 6.)

Counsel reasonably discerned that she could not introduce on appeal new evidence regarding the significance of the cord in Brown's pocket. *See, e.g.*, *Ramirez v. Galaza*, 334 F.3d 850, 859 n.6 (9th Cir. 2003) (observing that courts "have consistently held that a party may not raise new issues of fact on appeal after declining to present those facts before the trial court."). Further, no reasonable possibility exists that introducing evidence of keys would have altered the result of the appeal. Ms. Torres was unequivocal in her testimony regarding feeling Brown's *hand* press against her buttock. Accordingly, Claim One will be DISMISSED because Brown fails to demonstrate deficiency or prejudice.

### III. Conclusion

Brown's claims and the action will be DISMISSED. Brown's § 2255 Motion, (ECF No. 46), will be DENIED.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

7

that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Brown has not satisfied this standard. A certificate of appealability will be DENIED.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 10/17/2022
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

8